# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 03-50105-01 |
| VERSUS | CIVIL ACTION NO. 06-1002 |
| JOHN PAUL STRAHAN | JUDGE S. MAURICE HICKS, JR. |

**MEMORANDUM RULING**

Before the Court is John Paul Strahan's ("Strahan") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. See Record Document 44. For the reasons set forth herein, Strahan's motion is **DENIED**.

**I.    FACTUAL BACKGROUND.**

On February 26, 2003, Louisiana law enforcement officers conducted a traffic stop of Anthony Kellogg ("Kellogg") and found three ounces of "ice" (methamphetamine) and 100 ecstacy tablets. Kellogg agreed to cooperate with officers in a controlled delivery of these drugs to Joshua Arceneaux ("Arceneaux"). After his apprehension, Arceneaux also agreed to cooperate with the officers.[1] Both Kellogg and Arceneaux identified Strahan, who lived in Texas, as their source for methamphetamine.

On January 22, 2003, based on information provided by a confidential and reliable informant, Officer Barry Ragsdale ("Officer Ragsdale")[2] of the Dallas Police Department obtained a search and arrest warrant for Strahan's residence from a municipal court judge in Dallas County, Texas. Later on the same day, Texas law enforcement officers and United States Drug Enforcement Administration agents executed the warrant at Strahan's apartment in Dallas, Texas, finding 3.3 grams of d-Methamphetamine HCL in the master

---

[1] Both Kellogg and Arceneaux pled guilty to conspiracy charges.

[2] Officer Ragsdale was assigned to the Narcotics Division of the Dallas Police Department. See Record Document 46, Exhibit A at ¶ 5. At the time relevant to the instant case, Officer Ragsdale was assigned to the United States Drug Enforcement Administration as a Task Force Officer. See id.

bedroom and 17.5 grams of d-Methamphetamine in the storage closet. The search also revealed a rifle and a shotgun in the storage closet, along with a Glock, Model 30, .45 caliber pistol containing 16 live rounds of ammunition in the master bedroom of the apartment. Additionally, $1,120.00 cash was seized from the master bedroom.

## II. PROCEDURAL BACKGROUND.

On September 24, 2003, a federal grand jury returned a three-count indictment against Strahan. See Record Document 1. Count One charged Strahan with conspiracy to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, beginning in 2002 and continuing through February 27, 2003, all in violation of 21 U.S.C. §§ 841(a)(1) and 846. See id. Count Two charged Strahan with possession of a firearm in furtherance and in relation to a drug trafficking crime, on or about January 22, 2003, all in violation of 18 U.S.C. § 924(c)(1) and (2). See id. Count Three was a forfeiture count. See id.

During his initial appearance on November 20, 2003, Strahan advised the Court that he had retained Mr. Tom Cox from Dallas, Texas as counsel and Mr. Cox confirmed that he would enroll as retained counsel. See Record Document 7. Thus, the appointment of Mr. Joseph Woodley, through the Office of the Federal Public Defender, was terminated. See id.

On November 25, 2003, Strahan pleaded not guilty to all counts of the indictment. See Record Document 9. Strahan later filed a motion to suppress, which came before Magistrate Judge Roy Payne on an evidentiary hearing on February 5, 2004. See Record Document 16. The magistrate judge issued a Report and Recommendation, recommending that the motion to suppress be denied. See id. On March 10, 2004, this Court issued an order concurring with the recommendation of the magistrate judge and denied the motion to suppress. See Record Document 21.

On March 12, 2004, Mr. Peter Flowers enrolled as retained counsel for Strahan.

See Record Documents 20 & 22.  Pursuant to a written plea agreement, Strahan entered a plea of guilty as to Counts One and Two of the indictment.  See Record Documents 29-32.  On August 25, 2004, Strahan was sentenced to 120 months as to Count One and 60 months as to Count Two.  See Record Document 38.  The sentences are to run consecutively.  See id.  Strahan timely appealed his sentence.  See Record Document 39.

On June 14, 2005, the United States Court of Appeals for the Fifth Circuit affirmed Strahan's sentence.  See Record Document 43.  Strahan filed the instant Section 2255 motion on June 12, 2006.  See Record Document 44.

### III.   LAW AND ANALYSIS.

Strahan contends that he is entitled to relief under 28 U.S.C. § 2255 due to ineffective assistance of counsel.  First, he argues that his counsel was ineffective during the plea agreement process because he "failed to research the relevant facts and law concerning 18 U.S.C. § 924(c)(1) as it applied to [Strahan's] case." Record Document 44 at 5.  Strahan further contends that his counsel's failure to investigate and explain to him the facts and law pertaining to Section 924(c)(1) "rendered [his] plea involuntary." Id. at 8.  Second, Strahan alleges that his counsel failed to object to the validity of the warrant executed at his home in Dallas, Texas.  See id. at 8-12.  Specifically, Strahan argues that Officer Ragsdale failed to adhere to Federal Rule of Criminal Procedure 41; that the municipal court of Carrollton, Texas was not a "state court of record"; and that the warrant was executed outside the jurisdictional scope of the court issuing the warrant.  See id. at 9.  Again, Strahan maintains that his "counsel's failure to research facts and law concerning the [s]earch [w]arrant in [his] case constitutes ineffective assistance of counsel" and violated his rights pursuant to Rule 41.

Ineffective assistance of counsel claims may be considered under a Section 2255 motion.  See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996); United States v. Navejar, 963 F.2d 733, 735 (5th Cir. 1992).  In order to successfully prove a claim of

ineffective assistance of counsel, Strahan must prove that (1) his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). When applying the first prong of the Strickland analysis, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Strahan may only overcome this presumption by showing that under the "totality of the circumstances," the attorney's performance was outside the wide range of professionally competent assistance. Id. at 690, 104 S.Ct. at 2066.

Under the second prong of the Strickland test, Strahan must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. In order to establish prejudice under the second prong, Strahan must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." United States v. Saemz-Forero, 27 F.3d 1016, 1019 (5th Cir. 1994); Carter v. Johnson, 110 F.3d 1098, 1110 (5th Cir. 1997); Murray, 736 F.2d at 282.

The prongs of the Strickland test need not be analyzed in any particular order. See Goodwin v. Johnson, 132 F.3d 162, 173 n. 6 (5th Cir. 1998); Murray, 736 F.2d at 282. If Strahan fails to satisfy either prong of the Strickland test, then his claims of ineffective assistance of counsel must fail. See Tucker v. Johnson, 115 F.3d 276, 289 (5th Cir. 1997); Bryant, 28 F.3d at 1415; Williams v. Collins, 16 F.3d 626, 631 (5th Cir. 1994).

### A. Ineffective Assistance of Counsel Claim Relating to 18 U.S.C. § 924(c)(1).

Strahan argues that his counsel failed to research the applicability of 18 U.S.C.

924(c)(1)[3] to his case, which ultimately lead to his involuntarily pleading guilty to the offense of possessing a firearm in the furtherance of a drug trafficking crime. The crux of his argument is that his counsel failed to explain to him that the mere presence of a firearm at the scene does not support a conviction under Section 924(c)(1).

On April 30, 2004, Strahan entered a plea of guilty to possession of a firearm in furtherance and in relation to a drug trafficking crime. "Solemn declarations in open court carry a strong presumption of verity." U.S. v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994), citing Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629 (1977); see also U.S. v. Martinez-Molina, 64 F.3d 719, 733 (1st Cir. 1995) ("statements [made] in open court during a plea hearing 'carry a strong presumption of verity.'"). Further, in the context of a guilty plea, the prejudice requirement of the Strickland test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985). Specifically, this Court must consider whether "there is a reasonable probability that, but for counsel's errors, [Strahan] would not have pleaded guilty and would have insisted on going to trial." Id.

Here, the Court will focus on several key statements made by Strahan at the guilty plea hearing. The Court explained the elements Section 924(c)(1) and then asked Strahan if the Government could prove the elements beyond a reasonable doubt. See Guilty Plea Transcript at 23. Strahan answered yes, thus admitting under oath that he possessed a firearm that furthered, advanced, or helped forward the drug-trafficking crime. See id. at

---

[3] 18 U.S.C. § 924(c)(1)(A) states in pertinent part:

[A]ny person who, during and in relation to any . . . drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime –

  (I)   be sentenced to a term of imprisonment of not less than 5 years.

24. In fact, there was much discussion as to the elements of Section 924(c)(1):

> Defense Counsel: I just want – the law in that area, whether or not a weapon is used in furtherance, has primarily to do with proximity of the weapon, physical proximity. Given those issues, the Defendant feels that the Government could prove that he was guilty of the weapon being in furtherance. The Defendant, the Government would agree, never touched the weapon or tried to get the weapon, but because the weapon was – by virtue of its presence in the house and its accessibility, we believe the Government could prove that it was used in furtherance, and so that's – the Defendant admits that.

Id. at 24-25. Moreover, in the written plea agreement, Strahan acknowledged and agreed that the weapons listed in the indictment were possessed in furtherance of unlawful drug activity. See Record Document 30. The Court further asked Strahan if he was willing to plead guilty because he was in fact guilty as charged. See Guilty Plea Transcript at 27. Strahan again answered in the affirmative. See id. Likewise, in the Understanding of Maximum Penalty and Constitutional Rights, Strahan declared that his plea was free and voluntary and that he was pleading guilty because he was in fact guilty as charged. See Record Document 31.

Moreover, a review of applicable case law evidences that Strahan's conduct fell within the parameters of Section 924(c)(1). The Government concedes that the mere presence of a gun at the scene is not enough to establish a conviction for possession of a firearm in furtherance of a drug trafficking offense. Yet, the agreed upon facts in this case indicate more than the mere presence of firearms. The testimony at the guilty plea hearing, which Strahan agreed to, established that one loaded gun, as well as drugs and cash, was found in the master bedroom. Two more firearms were also found in a storage closet containing drugs. Strahan admitted in the guilty plea that such guns were accessible. This case closely mirrors U.S. v. Ceballos-Torres, 218 F.3d 409 (5th Cir. 2000), wherein the Fifth Circuit stated:

> [F]irearm possession that furthers, advances, or helps forward the drug trafficking offense violates [18 U.S.C. § 924(c)]. In the present case, the

> evidence before us supports a conclusion that [the defendant's] possession of the Glock was "in furtherance" of his drug trafficking offense. The weapon was loaded and easily accessible in [the defendant's] apartment, and he confessed to ownership of the firearm. It was possessed illegally. And it was possessed in the apartment along with a substantial amount of drugs and money. Together, these factors reasonably support a finding that Ceballos's gun protected his drugs and money against robbery. Possession of the Glock was, therefore, in furtherance of drug trafficking.

Ceballos-Torres, 218 F.3d at 415.

Based on the aforementioned analysis, the Court finds that Strahan's ineffective assistance of counsel claim relating to Section 924(c)(1) is without merit. Strahan has not carried his burden of proving that his plea was involuntary. Simply put, his statements at the guilty plea hearing, alongside the documents signed by the defendants and filed into the record at the time of the guilty plea, demonstrate that his plea was indeed voluntary. Further, the facts of this case indicate that Strahan's counsel was not ineffective in advising him to plead guilty to the 18 U.S.C. § 924(c)(1) charge. The actions to which Strahan admitted fell within the scope of the offense. Accordingly, Strahan's ineffective assistance of counsel claim relating to Section 924(c)(1) fails.

      **B.**    **Ineffective Assistance of Counsel Claim Relating to Search Warrant.**

Strahan also argues that his counsel was ineffective in arguing the motion to suppress, specifically that his counsel failed to object to the validity of the warrant. According to Strahan, the warrant, which was executed by, among others, Officer Ragsdale, violated Rule 41 because it was signed by a municipal court judge, who was not a judge of a state court of record. Further, he contends that the warrant was invalid because the municipal court judge was located in Carrollton, but the search took place in Dallas, Texas, an area not within the municipal court judge's jurisdiction. Based on these arguments, Strahan contends that any and all evidence seized under the warrant should have been suppressed.

The filing of pretrial motions, including a motion to suppress, falls within the range of trial strategy. See Murray, 736 F.2d at 283 (citation omitted); Schwander v. Blackburn,

750 F.2d 494, 500 (5th Cir. 1985). Thus, Strahan must overcome the presumption that his attorney's actions fell within the scope of trial strategy by demonstrating "that under the 'totality of the circumstances,' the attorney's performance was outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 689-690, 104 S.Ct. at 2065-2066. Here, Strahan has failed to overcome this presumption, as "strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." Id. at 681, 104 S.Ct. at 2061.

Notwithstanding, the aforementioned arguments presented by Strahan are without merit. Strahan argues that the search and arrest warrant executed in this case violated Rule 41, which states in pertinent part:

> (b) Authority to Issue a Warrant. At the request of a federal law enforcement officer or an attorney for the government:
>
> (1) a magistrate judge with authority in the district -- or if none is reasonably available, a judge of a state court of record in the district -- has authority to issue a warrant to search for and seize a person or property located within the district.

F.R.Cr.P. 41(b)(1). At the outset, the Court notes that Rule 41 applies to warrants issued upon the request of a federal law enforcement officer or attorney for the government, not state warrants. See United States v. McKeever, 905 F.2d 829, 833 (5th Cir.1990) (en banc); U.S. v. Singer, 970 F.2d 1414, 1417 (5th Cir. 1992); U.S. v. Shaw, 920 F.2d 1225, 1229 (5th Cir. 1991). Such is the rule even if "federal officers may have participated in the search [executed pursuant to the state search warrant] and the evidence obtained from the search was offered in a federal prosecution." Shaw, 920 at 1229. Here, the warrant clearly evinces that it was issued by a state court based on a showing of probable cause by a peace officer under the law of Texas. See Record Document 46, Exhibit A. Thus, the requirements of Rule 41 simply do not apply to this case.

Yet, even if this Court assumes that the warrant in this case is a federal warrant, the

requirements of Rule 41 are satisfied. Rule 41(b)(1) references "a magistrate judge" or "a judge of a state court of record in the district." F.R.Cr.P. 41(b)(1). Relying on U.S. v. Perez, 375 F.Supp. 332, 334 (W.D. Tex. 1974) and Navarro v. U.S., 400 F.2d 315, 316 (5th Cir. 1968), Strahan argues that the municipal court judge who signed the warrant in this case was not "a judge of a state court of record," as required by Rule 41(b)(1). To determine whether a state court qualifies as a "court of record" under Rule 41, this Court must look to state law. See U.S. v. Hanson, 469 F.2d 1375, 1377 (5 Cir. 1972); U.S. v. Comstock, 805 F.2d 1194, 1198 (5th Cir. 1986) (stating that "the reliance of Rule 41(a) on state law for classifying courts as 'courts of record' renders the status of qualifying state courts subject to change at the action of state legislatures."). At the time Perez and Navarro were decided, there is no dispute that a municipal court judge in the state of Texas was not a judge of a state court of record. However, since that time, the Texas legislature has enacted the Uniform Municipal Courts of Record Act ("the Act"). See V.T.C.A. § 30.00001 et seq. In Comstock, a case decided in 1986, the Fifth Circuit recognized that "the Texas legislature . . . recently conferred court of record status, to some degree, on municipal courts in some Texas cities." Comstock, 805 F.2d at 1198, n. 4. The Comstock court cited Tex. Gov't Code §§ 30.001-30.404 (Vernon Pamphlet 1986), which is clearly the predecessor to the current Uniform Municipal Courts of Record Act. Under the Act, the governing body of a municipality is authorized to create a municipal court of record. See V.T.C.A. § 30.00003(a). The Act is also more inclusive than its predecessor and states that it applies to each municipality listed in the chapter. See V.T.C.A. § 30.00001(b)(1). Both the municipalities of Dallas and Carrollton are listed in the Act. See §§ 30.00811 and 30.01091. Thus, by virtue of the Act, the Texas legislature has authorized municipal court judges in both Dallas and Carrollton, and such judges are considered judges of a state court of record under Rule 41. Accordingly, Strahan's argument fails.

Next, Strahan maintains that the municipal court judge who signed the warrant in this case was in Carrollton, yet the search took place in Dallas, an area not within the Carrollton municipal court judge's jurisdiction.[4] However, the Fifth Circuit has held that Rule 41 refers to the federal district in which the property or person is located and specifically noted that the 1990 amendment to Rule 41 was "intended to make clear that judges of state courts of record within a federal district may issue search warrants for persons or property located within that district." U.S. v. Beaumont, 972 F.2d 553, 557-558 (5 Cir. 1992). Thus, because both Carrollton and Dallas are within the Northern District of Texas, Strahan's argument fails.[5]

The law is clear that an attorney's assistance cannot be ineffective for failing to raise a meritless claim. See Sones v. Hargett, 61 F.3d 410, 415 n. 5 (5th Cir. 1995); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995); Koch v. Puckett, 907 F.2d 524, 527 (5th

---

[4] The Court notes that although Strahan claims that the municipal court judge who signed the warrant was from Carrollton, the warrant itself references the City of Dallas, Dallas County, Texas. See Record Document 46, Exhibit A.

[5] Notwithstanding any of the aforementioned findings pertaining to the validity of the warrant under Rule 41, the warrant is also valid pursuant to the good faith exception. In Comstock, the Fifth Circuit stated:

> [W]here there is no constitutional violation nor prejudice in the sense that the search would likely not have occurred or been as abrasive or intrusive had Rule 41 been followed, suppression in these circumstances is not appropriate if the officers concerned acted in the affirmative good faith belief that the warrant was valid and authorized their conduct. Good faith . . . implies not only that Rule 41 was not knowingly and intentionally violated, but also that the officers did not act in reckless disregard or conscious indifference to whether it applied and was complied with. On the other hand, . . . we do not mean by "good faith" that the officers' conduct must be objectively reasonable.

Comstock, 805 F.2d at 1207. Under the good faith exception, suppression in this case would not have been appropriate. Officer Ragsdale acted in affirmative good faith in deciding to take the warrant to a municipal court judge and not a state district judge. He did not intentionally violate Rule 41 and was not consciously indifferent to such rule in presenting his affidavit to a municipal court judge, as he stated during the suppression hearing that he "ended up going to a municipal judge because it was on [his] way to the office that morning." Motion to Suppress Hearing Transcript at 17, lines 22-23.

Cir. 1990); Murray, 736 F.2d at 283. The record in this case easily establishes that Rule 41 was not violated; thus, Strahan's counsel was not ineffective for failing to argue that the warrant was invalid during the hearing on the motion to suppress.

## IV. CONCLUSION.

Based on the foregoing analysis, the Court finds that Strahan's ineffective assistance of counsel claims relating to 18 U.S.C. § 924(c)(1) and the validity of the warrant under Federal Rule of Criminal Procedure Rule 41 fail. Accordingly,

**IT IS ORDERED** that John Paul Strahan's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Record Document 44) be and is hereby **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 20th day of July, 2007.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE